Matter of Spaeth (2025 NY Slip Op 04794)

Matter of Spaeth

2025 NY Slip Op 04794

Decided on August 27, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 27, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
WILLIAM G. FORD, JJ.

2023-02619

[*1]In the Matter of Max William Spaeth, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Max William Spaeth, respondent. (Attorney Registration No. 5515564)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on May 3, 2017.

Courtny Osterling, White Plains, NY, for petitioner.
Max William Spaeth, White Plains, NY, respondent pro se.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District commenced a formal disciplinary proceeding against the respondent by serving and filing a notice of petition and a verified petition, both dated March 3, 2023, containing five charges of professional misconduct. The respondent served and filed a verified answer dated June 14, 2023. By decision and order on application dated October 19, 2023, the matter was referred to the Honorable Lester B. Adler, as Special Referee, pursuant to 22 NYCRR 1240.8(b)(1), to hear and report. In a report dated April 8, 2024, the Special Referee sustained all five charges in the petition. By notice of motion dated October 1, 2024, the Grievance Committee moves to confirm the Special Referee's report sustaining all five charges of professional misconduct and to impose such discipline upon the respondent as this Court deems just and proper. The respondent did not file a response to the Grievance Committee's motion.
The Petition
The petition alleges five charges of misconduct related to the respondent's escrow account maintained at Chase Bank, entitled "Spaeth & Counsel, LLC, Attorney Trust Account IOLA," with an account number ending in 0515 (hereinafter the escrow account).
Charge one alleges that between May 15, 2020, and May 18, 2020, the respondent was required to maintain $15,000 in the escrow account on behalf of the Prioleau real estate matter. Notwithstanding, the balance in the respondent's escrow account during that period fell to $13,563, which was $1,437 less than what the respondent was required to maintain. On May 19, 2020, the respondent was required to maintain a total of $35,000 in the escrow account on behalf of the Prioleau and Fucci real estate matters. Notwithstanding, the balance in the escrow account on that date was $34,810.30, which was $189.70 less than what the respondent was required to maintain. Between May 20, 2020, and June 29, 2020, the respondent was required to maintain $15,000 in the escrow account on behalf of the Prioleau real estate matter. Notwithstanding, the balance in the escrow account during that period was less than what he was required to maintain, with deficiencies ranging from $30.88 to $4,948.63. As a result, the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR [*2]1200.0).
Charge two alleges that between April 29, 2020, and June 30, 2020, at a time when fiduciary funds were on deposit in the escrow account, the respondent had approximately 52 instances of depositing personal funds into the escrow account, totaling approximately $19,682.92. As a result, the respondent commingled personal funds with funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct.
Charge three alleges that between May 1, 2020, and July 31, 2020, the respondent made improper disbursements from the escrow account, including withdrawals through third-party electronic fund transfer services, Venmo and Zelle. During this time period, the respondent made approximately 34 electronic fund transfers using Venmo and approximately 26 electronic fund transfers using Zelle for amounts ranging from $4.53 to $1,900. Additionally, the respondent made two wire transfers of $1,200 and $3,000, respectively, and two "electronic transfers" of $146 and $362, respectively. As a result, the respondent violated rule 1.15(e) of the Rules of Professional Conduct.
Charge four alleges that the respondent failed to maintain separate accounts for fiduciary funds entrusted to him, incident to his practice of law, and for his personal/business funds. In addition to the facts stated in connection with charge two described above, between July 2, 2020, and July 31, 2020, the respondent caused approximately 32 deposits of personal funds into the escrow account. Between May 1, 2020, and July 31, 2020, the respondent made approximately 64 disbursements from the escrow account to pay for personal expenses. As a result, the respondent violated rule 1.15(b)(1) of the Rules of Professional Conduct.
Charge five alleges that as a result of the facts and misconduct alleged in charges one
through four, the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation to rule 8.4(h) of the Rules of Professional Conduct.
The Hearing Record
A hearing was held on January 23, 2024. No witnesses were presented by the Grievance Committee, and the Grievance Committee rested on the 17 exhibits entered into evidence, without objections, to prove its case in chief. The respondent testified on his own behalf and did not call any witnesses. The respondent submitted five character letters in support of his good character and reputation.
The respondent admitted to the factual allegations in the petition but denied any of the allegations of misconduct. The respondent testified that he was admitted to the Bar in 2017 and is a sole practitioner. The respondent explained that in late 2019, he was in an accident and underwent surgery on his dominant hand and wrist, which affected his ability to work. The respondent stated that the balances in his personal and business accounts fell into the negative. On or about February 8, 2020, Chase Bank deactivated the respondent's personal accounts without warning. The respondent stated that he was unable to open a new account due to the COVID-19 pandemic.
The respondent testified that he was unable to work and remained "virtually unemployed" through the pandemic, finishing only two real estate closings. According to the respondent, all client funds were deposited into and paid out of the escrow account exactly when they were supposed to be and without delay. On April 29, 2020, the respondent received a deposit of $1,200 into the escrow account from "IRS Treas." The respondent explained that deposit was a federal stimulus check and he had the check deposited into the escrow account because it was his only bank account at the time. The respondent confirmed that April 29, 2020, was the first time that he deposited personal funds into the escrow account.
On May 15, 2020, the respondent transferred from the escrow account $200,147.30 related to the Marcatoma matter for a closing on a property, when there was only $198,700 on deposit for this matter. This transfer resulted in an over-disbursement of $1,447.30 from the escrow account. On May 19, 2020, the respondent received into the escrow account a deposit of $1,247.39 for the Marcatoma matter. This deposit reduced the over-disbursement for the Marcatoma matter to $200.
In May 2020, while handling client funds in the Marcatoma, Fucci, and Prioleau matters, the respondent made a number of deposits and withdrawals of a personal nature. On May 1, 2020, there was a wire transfer from the escrow account of $1,200 to Anthony Conklin, the respondent's housemate, for rent. On May 7, 2020, there was a deposit into the escrow account of $0.30, with a note on the bank statement that says "Google Test." The respondent explained this deposit was made to link Google Pay with the escrow account. There were also four deposits into the escrow account: (1) two deposits of $525.00 each on May 21, 2020, and May 27, 2020, and (2) two deposits of $159.25 each on May 21, 2020, and May 27, 2020. The respondent stated that these [*3]deposits were for unemployment insurance. On May 8, 2020, May 26, 2020, May 28, 2020, and May 29, 2020, there were 12 Venmo withdrawals totaling $1,814 from the escrow account. Of these 12 withdrawals, 3 withdrawals were listed as "payment" and 9 withdrawals were listed as "reload." The respondent testified that he had made arrangements to allow a third-party to withdraw funds from the escrow account, which contained client funds.
In June 2020, the balance in the escrow account frequently was less than $15,000, which was the amount the respondent was required to maintain for the Prioleau matter. The lowest balance in the escrow account was on June 16, 2020, when the balance in the account was $10,051.37, an invasion of client funds of nearly $5,000. The respondent stated that the other deposits into or withdrawals from the escrow account in June 2020, including the Venmo and Quick Pay/Zelle payments, were all of a personal nature. On June 30, 2020, the respondent issued a bank check of $15,000 for the Prioleau matter.
In July 2020, at which time the respondent stated that there were no client funds on deposit, the respondent made 32 deposits and 16 withdrawals into the escrow account, all of a personal nature.
The respondent admitted that the Zelle and Venmo transactions in the escrow account in May 2020, June 2020, and July 2020, were all personal transactions to various friends and roommates and for personal expenses not involving client funds. The respondent claimed that the escrow account was not linked to his Venmo account prior to Chase Bank closing his personal accounts.
The respondent made a brief statement in mitigation providing:
"At this point I would just like to reiterate the fact that during this time period my bank accounts have been closed, and shortly thereafter we went through the pandemic and during that time period I was doing what I thought was reasonable, and my only option in that there was never any willful intention to misappropriate funds or act — I guess not act within my responsibilities as an attorney and my responsibilities to my client as far as misappropriating any funds are concerned. There is no willful intent to use them to my benefit and I believe that my statements provided reflect that and hopefully demonstrate that the conduct that I engaged in was not that of fraud, deceit or misrepresentation. That is all."
The Special Referee's Report
The Special Referee sustained all fives charges of professional misconduct in the petition. In mitigation, the Special Referee noted that the respondent cooperated with the Grievance Committee, offered character letters attesting to the respondent's integrity, unselfishness, and care for others, and noted the steps that the respondent has taken, including reading books and taking courses on how to run a law firm and properly maintain an attorney escrow account. However, in aggravation, the Special Referee stated:
"Respondent [cannot] escape the fact that the funds he extracted from [the] escrow account were removed with intent and for his own benefit. Respondent states that his conduct was due to various factors that affected his ability to manage his accounts, including that he had surgery on his dominant hand and was impacted by the Covid-19 pandemic. He cannot argue that he made a mistake or that he did not know his actions were wrong. Using these escrow funds for such things as paying for rent, dinners, drinks, Amazon purchases, and paying back money he owed to friends all serve to indicate that he was only thinking of himself. Of course a plan to reimburse the funds is no excuse whatsoever for his actions. . . . Respondent['s] actions herein violated the rules and were clearly actions of volition. For that his explanations of why he took these actions do not measure up."
Findings and Conclusion
In view of the evidence adduced at the hearing and the respondent's admissions, we find that the Special Referee properly sustained all five charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, the respondent's lack of disciplinary history, his cooperation with the Grievance Committee's investigation, the evidence of his positive character, and the remedial measures the respondent has undertaken. Notwithstanding the mitigation advanced, we find that the respondent's actions were acts of volition, he failed to show sufficient remorse, he personally benefitted from his misconduct, and he failed to honor his obligations as a fiduciary. We agree with the Special Referee that a plan to reimburse the fiduciary funds in the escrow account does not excuse the misappropriation.
Under the totality of the circumstances, we find that the respondent's conduct warrants a suspension of two years (see Matter of Farkas, 133 AD3d 81).
LASALLE, P.J., DILLON, DUFFY, BARROS and FORD, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Max William Spaeth, is suspended from the practice of law for a period of two years, effective immediately, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than March 1, 2027. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Max William Spaeth, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Max William Spaeth, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Max William Spaeth, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court